# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-SA-01393-COA

**BOBBY E. WILSON**                                                  **APPELLANT**

**v.**

**MISSISSIPPI DEPARTMENT OF**                                      **APPELLEES**
**CORRECTIONS AND GIA McLEOD**

DATE OF JUDGMENT:                 11/15/2021
TRIAL JUDGE:                      HON. MARGARET CAREY-McCRAY
COURT FROM WHICH APPEALED:        SUNFLOWER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:           BOBBY WILSON (PRO SE)
ATTORNEY FOR APPELLEES:           TABATHA AMANDA-FAYE BAUM
NATURE OF THE CASE:               CIVIL - OTHER
DISPOSITION:                      AFFIRMED - 03/07/2023
MOTION FOR REHEARING FILED:

## BEFORE CARLTON, P.J., McCARTY AND EMFINGER, JJ.

### McCARTY, J., FOR THE COURT:

¶1. An inmate ordered a trial transcript from his robbery conviction. When it arrived at the prison facility, it was contained as a file on a compact disc. Classifying the CD as contraband, the facility refused to give it to the inmate. After filing a grievance and seeking relief from the trial court, the inmate ultimately received a paper copy of the transcript but was still denied possession of the CD itself. Determining that the facility has the authority to prohibit the inmate's possession of the CD, we affirm.

## BACKGROUND

¶2. The essential facts are not disputed. Bobby Wilson was convicted of bank robbery and sentenced as a violent habitual offender. *Wilson v. State*, 935 So. 2d 945, 947 (¶¶1-3)

(Miss. 2006). In the course of pursuing one of his appeals,[1] in 2017 Wilson paid the Supreme Court Clerk's Office for a copy of the transcript from his robbery trial. But the transcript was sent to Wilson as a file on a CD. The Mississippi Department of Corrections printed out the transcript and provided it to the inmate, but did not give him the CD.

¶3. Wilson insisted he was not just entitled to the transcript he ordered but also the physical CD on which it arrived. He filed a grievance through MDOC's Administrative Remedy Program (ARP) further asking that the CD be mailed to his mother. Indeed, even the Inmate Legal Assistance Program (ILAP) in his facility told Wilson he was not entitled to the CD since "an offender is not allowed to have a CD/disc in their possession." ILAP further reminded Wilson that "[a] paper copy of your transcript from the CD was given to you on June 29, 2017."

¶4. Dissatisfied, Wilson filed a series of grievances claiming the CD was his legal property and requesting it to be mailed to his mother's residence. Eventually, the facility agreed to mail the contents of the CD "to any valid legal address" but did not agree to mail the actual CD. Wilson then filed a complaint with the Sunflower County Circuit Court for judicial review.

¶5. In considering the relevant MDOC standard operating procedures, the trial court "found sufficient evidence that warranted upholding in part and reversing in part the decision

---

[1] In 2021, we affirmed Wilson's "fifth attempt to attack collaterally his initial criminal conviction in 1994 for automobile burglary, to which he pleaded guilty." *Wilson v. State*, 338 So. 3d 623, 625 (¶19) (Miss. Ct. App. 2021).

of the Mississippi Department of Corrections." The trial court held that "the decision of MDOC, to the extent it bars petitioner from sending the contents of the CD to his mother, is not supported by substantial evidence." Further, "[i]n accordance with MDOC policy and procedures, Wilson was provided hard copies of the content of the CD but was precluded from personal possession of the CD via the MDOC policy." The trial court refused to second-guess the facility's determination that the CD was contraband, but the court did determine that Wilson "should be provided a copy of the contents of the CD and allowed to mail such documents in accordance with MDOC's mail policy."

## STANDARD OF REVIEW

¶6.     "This Court reviews a circuit court's decision regarding an agency's actions using the same standard of review as trial courts." *Hooghe v. Shaw*, 332 So. 3d 341, 345 (¶12) (Miss. Ct. App. 2021). "We look to see whether the circuit court exceeded its authority, bearing in mind that a rebuttable presumption exists in favor of the action of the agency, and the burden of proof is on the party challenging the agency's action." *Id*. "The court examines whether the order of the administrative agency (1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the aggrieved party." *Id*. (internal quotation mark omitted). "Whether the circuit court has jurisdiction is a question of law and is reviewed de novo." *Id*.

## DISCUSSION

3

**Wilson is not entitled to the CD.**

¶7. Wilson argues that MDOC's refusal to provide him the CD and refusal to mail the CD to his mother's residence constitutes a "taking" and violates his constitutional rights.

¶8. MDOC is "vested with the exclusive responsibility for management and control of the correctional system." Miss. Code Ann. § 47-5-23 (Rev. 2015). With the responsibility of managing the correctional system comes the responsibility of ensuring the facilities are safe for inmates and staff. One way that MDOC ensures the safety of its facilities is by establishing policies and procedures to prohibit certain items within a facility.

¶9. Accordingly, the Legislature has banned certain items from correctional facilities such as alcoholic beverages, controlled substances, and narcotics and further defined as prohibited "contraband" items such as "coin or currency, money orders, traveler's checks, promissory notes, credit cards, personal checks or other negotiable instruments, knives, sharpened instruments, tools, explosives, ammunition and drug paraphernalia." Miss. Code Ann. § 47-5-191 (Rev. 2015).

¶10. State law also specifically bans possession of "*any . . . unauthorized electronic device*, contraband item, or cell phone or any of its components or accessories to include, but not limited to, Subscriber Information Module (SIM) cards or chargers." Miss. Code Ann. § 47-5-193(1) (Supp. 2019) (emphasis added); *see Pruitt v. State*, 122 So. 3d 806, 809 (¶1) (Miss. Ct. App. 2013) (examining the burden of proof in a conviction of an inmate for possession of a cell phone).

4

¶11. These prohibitions extend not only to inmates but also to "employees or officers of the Department of Corrections and any person allowed upon the premises. . . ." Miss. Code Ann. § 47-5-192(1) (Rev. 2015). One federal court has recognized this statute invests MDOC's commissioner with the authority "to identify non-permissible items in [a] detention facility" and deem[s] [a] violation of that promulgation as [a] misdemeanor punishable by not more than one year of incarceration." *Sanders v. Itawamba County*, No. 1:18cv116-RP, 2018 WL 3846314, at *2 n.3 (N.D. Miss. Aug. 13, 2018).

¶12. As a result, MDOC has promulgated certain standard-operation procedures to define what is and is not contraband. Per the SOP those items or goods prohibited from prisons are defined as contraband and are not allowed to be brought in or mailed out. MDOC's SOP 31-01-01 defines legal mail as "offenders' mail whether for litigation to the offender's attorney or in an attempt to regain legal services, to a judge or court clerk and/or to the opposing party in the offender's litigation." And under the SOP, inmates are not allowed to possess a CD, nor may inmates mail or receive "[a]ny audio or video medium (i.e. cassette, video tape, compact disc, DVD)." MDOC SOP 31-01-01.

¶13. Despite these policies, Wilson argues precedent allows him to possess and ultimately mail the CD. In support, he cites a case where we found an inmate had a possessory interest in a certain item, *Johnson v. King*, 85 So. 3d 307 (Miss. Ct. App. 2012). In that case, prison officials discovered several inmates using their drinking mugs to hide cell phone parts and drugs. *Id.* at 308 (¶1). Consequently, prison officials banned the mugs. *Id.* at (¶2). But one

5

inmate had purchased such a mug in the prison commissary. *Id*. at 309 (¶2). He filed an ARP to get the mug back, or at least the equivalent value. *Id*. at (¶2). The attempt failed, and he appealed. *Id*. at 308 (¶1).

¶14. On appeal, we held that MDOC's decision to deny relief violated the inmate's constitutional rights. *Id*. at 312 (¶10). In deciding the case, we first considered that the prison canteen had actually sold the inmate the mug it later banned. *Id*. at 311 (¶8). Secondly, the inmate bought his mug using his own money from his inmate account. *Id*. Lastly, at the time of the purchase, the mug was not prohibited but was an authorized piece of personal property an inmate could possess. *Id*.

¶15. We acknowledged that MDOC had the authority to classify items as contraband. *Id*. at (¶9). Yet taking the mug without compensation was improper. *Id*. at 312 (¶10). As a result, we held that MDOC should either provide the inmate with a clear mug comparable to the one taken or restore the value of the mug to the inmate's account. *Id*.

¶16. Wilson's reliance on this case is misplaced. In contrast with the inmate in *Johnson*, Wilson did not purchase a CD from the prison canteen and was never previously allowed to have a CD. The CD had been classified as contraband before the request for the trial transcript, and there is no proof that Wilson can use the CD as a storage medium or has the ability to access the data contained on the disc. Indeed, as set out above, state law expressly prohibits the inmate from possession of "*any . . . unauthorized electronic device . . . .*" Miss. Code Ann. § 47-5-193 (emphasis added). Therefore the possessory interest of the inmate in

6

*Johnson* has not attached.

¶17.   Yet as the trial court correctly concluded, Wilson does have a possessory interest in the *contents* of the CD.  The trial court properly ruled that the facility should have to provide him with a paper copy of the contents of the file.

¶18.   Wilson argues in the alternative he should be allowed to send the CD to his mother. However, MDOC's mail policy clearly limits what an inmate may send and receive in the mail, and CDs are expressly prohibited.  We conclude that the order of the administrative agency was supported by substantial evidence, not arbitrary or capricious, and not beyond the power of the agency to make.  And as set out above, since Wilson did not have a possessory interest in the CD itself, the decision did not violate some statutory or constitutional right of the aggrieved party.

## CONCLUSION

¶19.   In the present case, MDOC's contraband and mail policies prevent Wilson from possessing and mailing a CD.  MDOC previously determined that CDs are contraband and will not be mailed.  Because of this policy, Wilson does not have an attached possessory interest in the CD.

¶20.   For the foregoing reasons, the trial court's order granting in part Wilson's request to have the contents of the CD mailed to his mother and denying in part, holding that the CD may only be sent to a valid legal address, is affirmed.

¶21.   **AFFIRMED.**

7

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**